IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

VIDAL PASTRANA-LÓPEZ, et al.,

     Plaintiffs

         v.

GERMAN OCASIO-MORALES, et al.,

     Defendants

CIVIL NO. 09-1979 (JP)

## OPINION AND ORDER

Before the Court is Defendant Germán Ocasio-Morales' ("Ocasio") motion for summary judgment (**No. 66**), and Plaintiffs Vidal Pastrana-Lopez ("Pastrana"), and Nidza Gomez-Colon's opposition thereto (No. 72). Plaintiffs brought the instant action pursuant to 42 U.S.C. § 1983 alleging violations of the First Amendment, Fifth Amendment and Fourteenth Amendment to the United States Constitution. Plaintiffs also brought state law claims alleging violations of Puerto Rico Law 115 ("Law 115") of December 20, 1991, P.R. Laws Ann. tit. 29, § 194a; and Articles 1802 and 1803 of Puerto Rico's Civil Code, P.R. Laws Ann. tit. 31, §§ 5141-5142. For the reasons stated herein, Defendant's motion for summary judgment is hereby **GRANTED IN PART AND DENIED IN PART.**[1]

---

1.    The Court notes that Plaintiffs brought claims against Defendant only in his personal capacity, as the official capacity claims had already been brought in 08-cv-1399 (JP).

CIVIL NO. 09-1979 (JP)                -2-

## I.   MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE

The following material facts ("ISC UMF") were deemed uncontested by all parties hereto at the March 15, 2010, Initial Scheduling Conference (No. 36).

1.   Plaintiff Pastrana was employed as a Sergeant with the Puerto Rico Fire Department ("PRFD").

2.   On September 11, 2006, Plaintiff made some expressions on a local radio talk show called "Caiga quien Caiga[.]"

3.   The radio talk show "Caiga quien Caiga" was hosted by Luis Francisco Ojeda.

4.   At the time Pastrana made the expressions on the radio show, he occupied the position of Sergeant at the PRFD.

5.   By letter dated September 14, 2006 and received by Plaintiff, Pastrana was notified in writing by Defendant Ocasio that an investigation would ensue.

6.   As part of the Administrative Investigation conducted by the PRFD, Pastrana was interviewed under oath on November 13, 2006 by Damaris Rosario-González ("Rosario"), Esq., Special Assistant to the Chief of the PRFD.

7.   In said interview, Pastrana declined to declare and stated that his expressions on the radio show on September 11, 2006 were made in his capacity as President of a labor organization ("organización sindical"), in his free time and that he had a right to free speech.

CIVIL NO. 09-1979 (JP)          -3-

8.  The conclusion reached at the Investigation conducted by Rosario, Special Assistant to the Chief of the PRFD, was that Pastrana's expressions during the radio show were false, offensive and violated certain regulations of the Agency.

9.  On February 21, 2007, Defendant Ocasio issued a letter to Plaintiff, which was received by Plaintiff, called an intention of dismissal letter.

10. On March 7, 2007, Plaintiff requested by letter an informal hearing regarding Defendant's intention to dismiss him from his employment.

11. On March 26, 2007, an administrative hearing was held regarding Defendant's intent to dismiss Plaintiff from his position.

12. The administrative hearing ("informal hearing") was presided by José Avilés-Lamberty, examining officer.

13. On March 29, 2007, after the informal hearing, the examining officer rendered a Final Report in which he recommended the dismissal of Pastrana from his employment.

14. On March 29, 2007, the PRFD issued a Resolution, signed by Defendant Ocasio, notifying Plaintiff of his termination from employment and his right to appeal.

15. On April 20, 2007, Plaintiff filed an appeal at the "Comisión Apelativa del Sistema de Administración de

CIVIL NO. 09-1979 (JP)          -4-

> Recursos Humanos del Sistema Público" ("Appellate Commission") claiming that his dismissal was illegal and contrary to his free speech right.

16. Plaintiff's appeal is still pending before the Appellate Commission.

The following facts are deemed uncontested ("UMF") by the Court because they were included in the motion for summary judgment and opposition and were agreed upon, or they were properly supported by evidence and not genuinely opposed.

1. When Plaintiff called the radio show he stated that Defendant Ocasio had granted the firefighters benefits in order to receive their support for his appointment.

2. When Plaintiff called the radio show he stated that in accordance with Article 5.2 of Act 45, the increase in the contribution to the health insurance could not be negotiated in excess of what was provided by law and that Ocasio could not sign the clause because of that violation.

3. When Plaintiff made the expressions regarding Defendant's failure to comply with Article 5.2 of Act 45 he had not reviewed the most recent amendments of said law.

4. When Plaintiff called the radio show he stated that he would like to sit down with Francisco Ojeda so he could show him all the evidence he had against Ocasio.

CIVIL NO. 09-1979 (JP)            -5-

> Plaintiff also stated that Ocasio had left the San Juan area devoid of ("desprovista de") maritime safety.

5. When Plaintiff called the radio show, Plaintiff did not mention that he was the President of a bona fide labor organization of the PRFD.

6. The officers of the PRFD have no right to participate in labor unions.

7. At all times relevant to this action the PRFD only had one (1) fire extinguishing boat.

8. The fire extinguishing boat of the PRFD could give service in any fire in any coast of Puerto Rico.

9. There is nothing illegal in transferring the boat from Cataño to Ponce.

10. In the September 14, 2006 letter, Ocasio stated to Pastrana that his expressions in the radio show were the following: (1) that he accused Defendant Ocasio of negotiating the medical insurance illegally; (2) that the fire extinguishing boat was being used for pleasure purposes in Boquerón.

11. Plaintiff received and read the letter dated September 14, 2006, and thus, knew the content of the same.

12. Defendant Ocasio assigned attorney Damaris Rosario to conduct an investigation as to the veracity or falsity of the expressions made by Plaintiff in the radio show.

CIVIL NO. 09-1979 (JP)          -6-

13.  In the letter of February 21, 2007, Defendant Ocasio informed Plaintiff that the officers in charge of the supervision of the boat and the firefighters that worked on said unit were interviewed as part of the administrative investigation conducted by the PRFD regarding Plaintiff's expressions in the radio show.

14.  In the letter dated February 21, 2007 Defendant Ocasio informed Plaintiff that the officers interviewed as part of the administrative investigation testified that the boat was being use for official purposes only and that Plaintiff's expressions were false, incorrect, groundless, unfair and ill-intentioned.

15.  In the letter dated February 21, 2007 Defendant Ocasio informed Plaintiff that his accusation that Ocasio had negotiated illegally the benefits of the health insurance was false, unreal and vicious.

16.  The Final Report rendered by the Examining Officer, José Avilés-Lamberty and reviewed by Defendant Ocasio, shows that in the administrative hearing Plaintiff was assisted by legal representation.

17.  The Final Report rendered by the Examining Officer, José Avilés Lamberty and reviewed by Defendant Ocasio, shows that Plaintiff had the opportunity to testify, to present documentary evidence and a witness in his favor.

CIVIL NO. 09-1979 (JP)          -7-

18. The Final Report rendered by the Examining Officer, José Avilés Lamberty and reviewed by Defendant Ocasio, shows that in the administrative hearing Plaintiff testified that his expressions regarding the boat were that the San Juan area was devoid ("desprovista") and that he had received rumors that the boat was being used for pleasure.

19. Plaintiff had no evidence of the boat being used for pleasure purposes.

20. On February 28, 2006 the Senate of Puerto Rico issued a Resolution to conduct an investigation regarding the conditions of the equipment of the maritime unit (the boat).

21. Plaintiff had nothing to do with the fact that the Senate decided to investigate the conditions of the maritime unit; he was just summoned by the Senate to testify.

22. Plaintiff's statement before the Public Safety Commission of the Senate of Puerto Rico regarding the Senate Investigation of the conditions of the maritime unit was on October 31, 2006.

23. Plaintiff said that he was fired because of some comments he made on the "Caiga quien Caiga" show.

24. Defendant Ocasio as Chief of the Fire Department relied on the administrative investigation conducted by attorney Rosario and the Final Report rendered by the Examining

CIVIL NO. 09-1979 (JP)          -8-

        Officer José Avilés-Lamberty who recommended the dismissal of Plaintiff from his employment before signing the Resolution issued on March 29, 2007 notifying Plaintiff of his termination from employment and his right to appeal.

25. The letter dated September 14, 2006 is devoid of any allegation regarding Plaintiff's testimony in the Senate of Puerto Rico.

26. The letter dated February 21, 2007 notified Plaintiff of Defendant's intent to dismiss him from his employment due to the false statements he made on the radio show.

27. Said letter of February 21, 2007, has no mention of Plaintiff's testimony at the Senate.

28. Said letter of February 21, 2007, notified Plaintiff that his false statements in the radio show were a violation of Article 15:1, 8, 22, 28, 56, 66 and 72 of the Regulations on the Norms and Procedures Regarding Corrective Measures for Employees of the PRFD.

29. During the hearing, Plaintiff answered questions posed to him by the Examining Officer.

## II.  **LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT**

Summary judgment serves to assess the proof to determine if there is a genuine need for trial. <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 50 (1st Cir. 1990). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate

CIVIL NO. 09-1979 (JP)          -9-

when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Zambrana-Marrero v. Suárez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993); Canal Ins. Co. v. Benner, 980 F.2d 23, 25 (1st Cir. 1992). The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case. See Mack v. Great Atl. and Pac. Tea Co., Inc., 871 F.2d 179, 181 (1st Cir. 1989).

On a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant

CIVIL NO. 09-1979 (JP)          -10-

meets this burden, the burden shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. See Anderson, 477 U.S. at 248; Celotex, 477 U.S. at 324; Goldman, 985 F.2d at 1116.

## III. **ANALYSIS**

Defendant argues that summary judgment is appropriate because: (1) Plaintiffs' First Amendment claims regarding Pastrana's speech on the radio show fail since his speech was not protected; (2) Plaintiffs' First Amendment claims regarding Plaintiff Pastrana's speech before the Senate of Puerto Rico fail since Defendant did not dismiss Plaintiff Pastrana based on said speech; (3) Plaintiffs have failed to state causes of action under the Fifth Amendment and Fourteenth Amendment; (4) Defendant is entitled to qualified immunity; and (5) Plaintiffs have no cause action for their claims under Puerto Rico law.  Plaintiffs' oppose the motion.  The Court will now consider the parties' arguments.

### A.   **42 U.S.C. § 1983**

Plaintiffs bring claims under 42 U.S.C. § 1983 ("Section 1983") alleging violations of the First, Fifth and Fourteenth Amendments. Section 1983 creates a remedy for those who are deprived of the rights, privileges, or immunities granted to them by the Constitution or laws of the Unites States.  See Rodríguez García v. Municipality

CIVIL NO. 09-1979 (JP)          -11-

of Caguas, 354 F.3d 91, 99 (1st Cir. 2004) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  In order to succeed in a Section 1983 claim, Plaintiffs must prove that someone has deprived them of a right protected by the Constitution or the laws of the United States and that the perpetrator acted under color of state law.  Cruz-Erazo v. Rivera-Montañez, 212 F.3d 617, 621 (1st Cir. 2000).

### 1.  First Amendment Claims

Plaintiffs allege that Plaintiff Pastrana's First Amendment rights were violated because he was dismissed from his employment for engaging in protected speech.  Specifically, Plaintiff claims he was dismissed for speaking on a radio show and before the Senate of Puerto Rico.

"Public employees do not lose their First Amendment rights to speak on matters of public concern simply because they are public employees."  Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (citing Connick v. Myers, 461 U.S. 138, 142 (1983)).  However, said rights are not absolute.  Id.

The First Circuit Court of Appeals has articulated a three-part test to determine whether a challenged employment action violates the First Amendment right to freedom of speech of a public employee.  Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 765 (1st Cir. 2010).  First, the public employee must speak "as a citizen on a matter of public concern."  Id. (quoting Curran, 509 F.3d at 45).  "Second, the court must 'balance . . . the interests of the [employee], as a

CIVIL NO. 09-1979 (JP)          -12-

citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'"  Id. (quoting Curran, 509 F.3d at 44).  Lastly, "the employee must 'show that the protected expression was a substantial or motivating factor in the adverse employment decision.'"  Id. (quoting Curran, 509 F.3d at 45).

However, even if Plaintiffs demonstrate that the speech was a substantial or motivating factor in the employer's retaliatory action, Defendant can still avoid liability by demonstrating that it would have taken the same decision even absent the protected conduct. Id. at 765-66.  Said defense is called the Mt. Healthy defense.  See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

### a.   Plaintiff Pastrana's speech on radio show

To determine whether Pastrana's speech on the radio show is protected by the First Amendment, the Court must determine whether Pastrana was both (1) speaking as a citizen and (2) speaking on a matter of public concern.  Foley v. Town of Randolph, 598 F.3d 1, 5 (1st Cir. 2010).  If Plaintiff's speech fails to meet one of these two requirements, then there is no First Amendment claim.  Id. (citing Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)).  The United States Supreme Court has made clear "that when public employees make statements 'pursuant to their official duties,' they are not speaking

CIVIL NO. 09-1979 (JP)              -13-

as citizens for First Amendment purposes[.]'" _Id._ at 6 (quoting _Garcetti_, 547 U.S. at 421).

Defendant argues that summary judgment should be granted because Plaintiff's speech on the radio show was not protected since Plaintiff was not speaking as a citizen.[2] Defendant does not present arguments as to whether Plaintiff was speaking on a matter of public concern, and as to whether the interest of the State, as an employer, outweighed the interest of the employee. Also, Defendant does not dispute that Plaintiff was dismissed because of his statements on the radio show.[3] As such, the issue raised by Defendant deals with whether Pastrana was speaking as a citizen when he made his statements on the radio show "Caiga quien Caiga" on September 11, 2006.

Defendant argues that Plaintiff was speaking pursuant to his official duties because: (1) Plaintiff was a Sergeant of the PRFD at the time of his statements on the radio show; (2) Plaintiff spoke

---

2.   Also, Defendant argues that Plaintiff's speech on the radio show was not protected speech because Plaintiff was subsequently proved to have lied on the radio show. However, Defendant's argument fails because Defendant did not present evidence or argue that said false statements were knowing or reckless. Pugel v. Board of Trustees of University of Illinois, 378 F.3d 659, 668 n.9 (7th Cir. 2004) (finding that false and reckless speech may not be protected by the First Amendment even if it addresses matters of public concern); Stanley v. City of Dalton, 219 F.3d 1280, 1290 n.18 (11th Cir. 2000) (stating that knowingly or recklessly false statements are not entitled to First Amendment protection); Dill v. City of Edmond, 155 F.3d 1193, 1202 (10th Cir. 1998) ("deliberately or recklessly false statements do not receive First Amendment protection"). As such, the Court finds there is a question of material fact regarding whether Plaintiff's speech was protected.

3.   Further, the Court notes that Plaintiffs have produced sufficient evidence for a jury to conclude that Plaintiff was speaking on a matter of public concern and that Plaintiff was fired because of his statements on the radio show.

CIVIL NO. 09-1979 (JP)          -14-

about Defendant's decision to leave the San Juan area devoid of maritime safety while the maritime unit's boat was placed by Ocasio in Boquerón for pleasure purposes; (3) Plaintiff stated that Ocasio granted firefighters benefits in order to gain their support for his appointment; (4) Plaintiff stated that, in accordance with Article 5.2 of Act 45, the increase in contribution to health insurance cannot be negotiated in excess of what is provided by law and that Ocasio could not sign said clause because of that violation; (5) Plaintiff's official job responsibilities included being responsible for the maritime unit's boat and for the safety of the San Juan Port; and (6) Plaintiff presented himself on the radio show as representing a group of firefighters.

Plaintiffs counter by presenting evidence that Pastrana was speaking as a citizen because: (1) Pastrana's official job duties, at the time he made the comments on the radio station, did not include being responsible for the maritime unit's boat and for the safety of the San Juan Port; (2) Pastrana never stated that the boat was placed in Boquerón by Ocasio for pleasure purposes; and (3) Plaintiff did not present himself as representing a group of firefighters when he called the radio show.

After considering the arguments and evidence, the Court finds that there is a question of material fact as to whether Plaintiff was speaking as citizen when he spoke on the radio show on September 11, 2006. Accordingly, the Court **DENIES** Defendant's motion for summary

CIVIL NO. 09-1979 (JP)          -15-

judgment on Plaintiff's First Amendment claims related to his speech on the radio show.

> b.    *Plaintiff Pastrana's speech before the Senate*

To have a cause of action under the First Amendment, Plaintiff Pastrana must show that his expressions before the Senate were "a substantial or motivating factor" in Defendant Ocasio's decision to dismiss Pastrana. <u>Rodríguez-García</u>, 610 F.3d at 765 (citing <u>Curran</u>, 509 F.3d at 45).[4]

The only evidence cited to by Plaintiffs is a statement under penalty of perjury prepared by Senator Orlando Parga (No. 73-3).[5] Said statement provides evidence that Defendant Ocasio intended to sanction Plaintiff Pastrana for his insubordination.  However, the Court need not decide whether said statement provides sufficient evidence for a reasonable jury to conclude that Plaintiff's statements before the Senate were either a motivating or substantial factor in Defendant's decision to dismiss Plaintiff because the <u>Mt. Healthy</u> defense is applicable here.

The <u>Mt. Healthy</u> defense is applicable here because the uncontested facts show that Defendant would have terminated Plaintiff based solely on Plaintiff's statements on the radio show.

---

4.    The Court will focus on this issue because no arguments were presented as to whether the speech before the Senate constituted protected speech.

5.    Plaintiffs also explain that the deposition of Senator Orlando Parga was taken by Defendant but that the transcript of the deposition is not ready. Since no deposition transcript was provided, the Court will rely only on his sworn statement.

CIVIL NO. 09-1979 (JP)          -16-

<u>Rodríguez-García</u>, 610 F.3d at 765-66.  Prior to Plaintiff's testimony before the Senate of Puerto Rico on October 31, 2006, Defendant Ocasio had already sent a letter to Plaintiff, dated September 14, 2006, indicating to Plaintiff that an administrative investigation would ensue as to the veracity of Plaintiff's statements on the radio show.  ISC UMF 5 and UMF 22.  Said investigation determined that Plaintiff's statements on the radio station were false, offensive and violated certain regulations.  ISC UMF 8.

As a result of said investigation, Defendant issued a letter indicating his intent to dismiss Plaintiff based on his statements on the radio show.  ISC UMF 9, and UMF 13, 14, 15, 26, 27, and 28.  After said letter, Plaintiff requested a hearing.  ISC UMF 10.  The hearing resulted in a report which recommended that Plaintiff be dismissed from his employment.  ISC UMF 12 and 13, and UMF 16, 17, 18, and 24.  Relying on the administrative investigation and the final report by the examining officer at the hearing, Defendant Ocasio notified Plaintiff of his termination.  ISC UMF 14 and UMF 24.  Plaintiffs have not pointed to any evidence showing that Plaintiff's statements before the Senate affected any of the proceedings which led to Plaintiff's dismissal.[6]  Based on said evidence, the Court finds that Defendant Ocasio is entitled to

---

6.    Further, the Court notes that in his own deposition Plaintiff seemed to admit that the reason behind his dismissal was his statements on the radio show. UMF 23.

CIVIL NO. 09-1979 (JP)          -17-

summary judgment on Plaintiffs' First Amendment claims related to Plaintiff Pastrana's statements before the Senate of Puerto Rico.

### 2.   Fifth Amendment Claims

In the instant case, Plaintiffs bring due process claims under the Fifth Amendment of the U.S. Constitution.  Defendant requests that summary judgment be granted on said claims because the Fifth Amendment only applies to actions of the federal government and the Plaintiffs' claims do not relate to the federal government.

The First Circuit has stated that "one or another or both of the Constitution's two due process clauses (that in the Fifth Amendment and that in the Fourteenth) apply to Puerto Rico[.]"  <u>Tenoco Oil, Co., Inc. v. Department of Consumer Affairs</u>, 876 F.2d 1013, 1017 n.9 (1st Cir. 1989).  However, more recently, the First Circuit has taken the analytical approach of construing the actions of the Puerto Rico government as actions of a state, which are therefore subject to constitutional limitations via the Fourteenth Amendment. <u>Martínez-Rivera v. Sánchez-Ramos</u>, 498 F.3d 3, 8-9 (1st Cir. 2007) (finding in case involving Puerto Rico government actors that "[a]s plaintiffs do not allege that any of the defendants are federal actors, any Fifth Amendment claim was properly dismissed[]").

In light of the more recent First Circuit law applying Fourteenth Amendment analysis to constitutional claims alleging action attributable to non federal entities, the Court will follow

CIVIL NO. 09-1979 (JP)          -18-

this approach.  Accordingly, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiffs' Fifth Amendment claims.

### 3.   Fourteenth Amendment Claims

Plaintiffs bring claims under both the procedural and substantive due process of the Fourteenth Amendment.  Defendant argues that summary judgment should be granted on said claims. Plaintiffs oppose the motion.

### a.   *Procedural Due Process*

To succeed on a procedural due process claim, Plaintiffs must show that they were deprived of a life, liberty, or property interest without the requisite minimum measure of procedural protection warranted under the circumstances.   See  Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 32 (1st Cir. 1996).  Plaintiffs argue that their procedural due process rights were violated because Plaintiff Pastrana was deprived of his property interest in his employment when he was dismissed by Defendant.

After considering the argument, the Court finds that Plaintiff's argument fails.   There is no dispute in the instant case that Plaintiff Pastrana was deprived of his property when he was dismissed from his job.  However, Plaintiffs' claim fails because Pastrana was given the due process owed to him.

Due process requires that prior to a deprivation of a life, liberty, or property interest the individual being deprived of said interest be given notice and an opportunity for a hearing.

CIVIL NO. 09-1979 (JP)          -19-

Ramos-Martínez  v.  Negrón-Fernández,  393  F.  Supp.  2d  118,
121  (D.P.R.  2005)  (citing  Cleveland  Board  of  Education  v.
Loudermille, 470 U.S. 532 (1985)).  "[A]n individual [must] be given
an opportunity for a hearing before he is deprived of any significant
property  interest[.]"   Boddie  v.  Conneticut,  401  U.S.  371,
379 (1971).  Under said principal, an individual, such as Plaintiff,
who is being discharged from his employment and who has a property
interest in his employment must be given "some kind of a hearing[.]"
Ramos-Martínez, 393 F. Supp. 2d at 121 (quoting Board of Regents v.
Roth, 408 U.S. 564, 569 (1972)).

    In  the  instant  case,  the  Court  finds  that  the  uncontested
evidence shows that Plaintiff was provided with all the due process
required.  Plaintiff was provided with notice of the charges brought
against him when he received a letter, issued  on February 21, 2007,
from Defendant Ocasio.  ISC UMF 9, and UMF 13, 14, 15, 26, 27 and 28.
Said letter was called an intention of dismissal letter and provided
Plaintiff with notice of the charges against him.  ISC UMF 9, and
UMF 13, 14, 15, 26, 27 and 28.  Plaintiff responded to said letter
by requesting an informal hearing regarding Defendant's intention to
dismiss him from his employment.  ISC UMF 10.

    An  administrative  hearing  regarding  Defendant's  intent  to
dismiss Plaintiff was held on March 26, 2007.  ISC UMF 11.  At said
hearing, Plaintiff was assisted by legal representation and was
granted the opportunity to testify, present documentary evidence and

CIVIL NO. 09-1979 (JP)          -20-

to introduce a witness.  UMF 16 and 17.  After said hearing, the examining officer rendered a report in which he recommended the dismissal of Plaintiff Pastrana from his employment.  ISC UMF 13. As a result, the Puerto Rico Fire Department issued a resolution, on March 29, 2007 and signed by Defendant Ocasio, informing Plaintiff of his dismissal and of his right to appeal.[7]  ISC UMF 14 and UMF 24. Based on said uncontested evidence, the Court finds that Plaintiffs' Fourteenth Amendment procedural due process claim fails.[8]

### b.   *Substantive Due Process*

In their complaint and their opposition to the motion for summary judgment, Plaintiffs state that Defendant violated Plaintiff Pastrana's substantive due process rights because there was an egregious abuse of process when Plaintiff was removed from his employment.

To meet their burden on their substantive due process claims, Plaintiffs "must present a well-pleaded claim that a state actor deprived [them] of a recognized life, liberty, or property interest, and that he did so through conscience-shocking behavior." Estate of Bennett v. Wainwright, 548 F.3d 155, 162 (1st Cir. 2008).  The "shock the conscience" standard deals with behavior that is "so egregious,

---

7.   Plaintiff filed an appeal with the Appellate Commission on April 20, 2007. Said appeal is still pending.

8.   The Court notes that, in their opposition to Defendant's argument, Plaintiffs simply conclude that Pastrana's dismissal from his employment was done without the guarantees of the due process clause. However, Plaintiffs failed to present evidence or even argue how the notice or hearing provided did not comply with due process.

CIVIL NO. 09-1979 (JP)          -21-

so outrageous, that it may fairly be said to shock the contemporary conscience." <u>Ramos-Piñero v. Puerto Rico</u>, 453 F.3d 48, 53 (1st Cir. 2006) (citing <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 848 n.8 (1998)).

In the instant case, Defendant argues that Plaintiffs have failed to properly plead their substantive due process claim.  The Court agrees with Defendant. While Plaintiff did plead that Plaintiff Pastrana had a property interest taken away by Defendant, Plaintiffs failed to properly plead that the act by Defendant shocked the conscience.  The only allegation by Plaintiffs was a conclusory allegation that Defendant engaged in an egregious abuse of process when he removed Plaintiff from his position.  No facts were provided by Plaintiffs, in either their complaint or their opposition to the motion for summary judgement, stating how Pastrana's removal from his employment constituted an egregious abuse of process.  Such conclusory allegations will not do.  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009). Accordingly, the Court finds that Plaintiffs failed to state a cause of action for their substantive due process claim.

### B.   <u>Qualified Immunity</u>

Qualified immunity "provides defendant public officials an immunity from suit and not a mere defense to liability." <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 268 (1st Cir. 2009). Qualified immunity has a two-part test that requires that the Court "decide: (1) whether

CIVIL NO. 09-1979 (JP)          -22-

the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Id. at 268-69 (quoting Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009)).  A right is considered to be "clearly established" when the contours of the right are sufficiently clear that "a reasonable official would understand that what he is doing violates that right." Costa-Urena v. Segarra, 590 F.3d 18, 29 (1st Cir. 2009) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  As such, a right is considered to be "clearly established if, at the time the defendant acted, he was on clear notice that what he was doing was unconstitutional."  Id. (citing Maldonado, 568 F.3d at 269).

     After considering the evidence, the Court finds that Defendant is not entitled qualified immunity.   Plaintiffs have presented sufficient evidence for a jury to conclude that Defendant violated Plaintiffs' First Amendment rights by terminating Plaintiff Pastrana based on his protected speech.   It is clearly established that dismissing a public employee in response to said employee's protected speech violates the First Amendment.   Board of County Commissioners, Wabaunsee County, Kansas v. Umbehr, 518 U.S. 668, 675 (1996) (citing Connick v. Myers, 461 U.S. 138, 146 (1983)).

     Defendant states that he is entitled to immunity because Plaintiff's speech was not protected when he lied. As previously explained, whether Plaintiff's speech was protected is a disputed

CIVIL NO. 09-1979 (JP)          -23-

issue of material fact.  Under said circumstances, granting qualified

immunity would be inappropriate.  <u>Costa-Urena</u>, 590 F.3d at 29 (citing

<u>Roure v. Hernández-Colón</u>, 824 F.2d 139, 141 (1st Cir. 1987)).

### C.   **Puerto Rico Law Claims**

Plaintiff also bring claims arising under Puerto Rico law,

specifically Law 115 of December 20, 1991, P.R. Laws Ann. tit. 29,

§ 194a; and Articles 1802 and 1803 of Puerto Rico's Civil Code,

P.R. Laws Ann. tit. 31, §§ 5141-5142.  Defendant argues that summary

judgment should be granted on Plaintiffs' Law 115 claims and

Article 1803 claims because Defendant cannot be held liable under

said statutes.[9]

### 1.   **Law 115**

Law 115 establishes that:

> No employer may discharge, threaten, or discriminate
> against an employee regarding the terms, conditions,
> compensation, location, benefits or privileges of the
> employment should the employee offer or attempt to offer,
> verbally or in writing, any testimony, expression or
> information before a legislative, administrative or
> judicial forum in Puerto Rico, when such expressions are
> not of a defamatory character nor constitute disclosure of
> privileged information established by law.

Defendant argues that the use of the word "employer" would

exclude claims against him in his personal capacity since Plaintiff's

employer was the PRFD, an arm of the Commonwealth of Puerto Rico.

---

9.   With regard to the Article 1802 claims, Defendant requests that, if the Court
     dismisses the federal claims, the Court exercise its discretion and dismiss the
     Article 1802 claims. In light of the fact that the Court has not dismissed all
     the federal claims, the Court **DENIES** Defendant's request to dismiss the Article
     1802 claims.

CIVIL NO. 09-1979 (JP)          -24-

After considering the argument, the Court disagrees with Defendant. This Court has already ruled that Law 115 does permit for individual liability of a supervisor who retaliates against an employee. Reyes-Guadalupe v. Casas Criollas, 597 F. Supp. 2d 255, 260 (D.P.R. 2008) (citing Hernández v. Raytheon Service Company Puerto Rico, 05-cv-1937 (CCC), 2006 WL 1737167 (D.P.R. Apr. 26, 2006)).

### 2.    Article 1803 of Puerto Rico's Civil Code

Defendant argues that he is entitled to summary judgment on Plaintiffs' Article 1803 claim. As a general rule, an individual is only liable for his own acts or omissions and only by exception is an individual liable for the acts or omissions of others. Burgos-Oquendo v. Caribbean Gulf Refining Corp., 741 F. Supp. 330, 332 (D.P.R. 1990). "Only when clearly specified in the law can liability for the acts or omissions of others be enforced against a third party." Id. at 332-33 (citing Vélez v. Llavina, 18 P.R.R. 634 (1912)).

Article 1803 of Puerto Rico's Civil Code enumerates the cases in which vicarious liability is applicable. Id. at 333. The exceptions to the general rule, as laid out in Article 1803, are:

> [(1)][t]he father, and, in the event of his death or incapacitation, the mother, is liable for the damage caused by the minor children living with them[;] [(2)] [g]uardians are liable for the damages caused by minors or incapacitated persons who are under their authority and live with them[;] [(3)] [o]wners or directors of an establishment or enterprise are likewise liable for any

CIVIL NO. 09-1979 (JP)          -25-

> damages caused by their employees in the service of the branches in which the latter are employed or on account of their duties[;] [(4)] [t]he Commonwealth is liable in this sense under the same circumstances and conditions as those under which a private citizen would be liable[;] [and (5)] . . . masters or directors of arts and trades are liable for the damages caused by their pupils or apprentices while they are under their custody.

P.R. Laws Ann. tit. 31, § 5142.  In the instant case, the Court finds that Defendant is entitled to summary judgment on the Article 1803 claim because none of the exceptions are applicable to the facts in this case.

**IV.   CONCLUSION**

In conclusion, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion for summary judgment.  The Court will enter a separate judgment dismissing Plaintiffs' claims based: (1) on the First Amendment which are related to Plaintiff Pastrana's speech before the Senate of Puerto Rico; (2) on the Fifth and Fourteenth Amendments; and (3) on Article 1803 of Puerto Rico's Civil Code, P.R. Laws Ann. tit. 31, § 5142.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of October, 2010.

                              s/Jaime Pieras, Jr.
                              JAIME PIERAS, JR.
                              U.S. SENIOR DISTRICT JUDGE